**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| ENCOMPASS HOME & AUTO<br>INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO.: 4:19-cv-79 |
| v. | |
| STEVENS HALE & ASSOCIATES, | |
| Defendant. | |

**O R D E R**

Plaintiff Encompass Home & Auto Insurance Company ("Encompass") initiated this lawsuit on April 11, 2019, seeking to recover from Defendant Stevens Hale & Associates ("Stevens Hale") the economic losses it suffered when claims were made on two Encompass insurance policies Stevens Hale had been involved in procuring. (Doc. 1 (original Complaint); see doc. 44 (Second Amended Complaint).)  In the Second Amended Complaint, Encompass asserts negligence, negligent misrepresentation, and negligent undertaking claims against Stevens Hale. (See doc. 44.)  Presently before the Court is Stevens Hale's Motion for Summary Judgment, (doc. 58), in which it argues that it is entitled to summary judgment on all of Encompass's claims.  (See doc. 58-1.)  For the following reasons, the Court **GRANTS** Defendant Stevens Hale & Associates' Motion for Summary Judgment.  (Doc. 58.)

# BACKGROUND

## I.    Factual Background

The following facts are undisputed.[1]

---

[1] Stevens Hale argues that the Court should deem admitted the facts contained in its Statement of Material Facts because Encompass failed to dispute those facts with citations to the record in its Response to Stevens Hale's Statement. (Doc. 65, pp. 3–5.) Federal Rule of Civil Procedure 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support the assertion by . . . citing to *particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Furthermore, pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Moreover, this Court's Local Rule 56.1 provides,

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, in addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof . . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.

(emphasis added). Encompass, in its Response to Stevens Hale's Statement of Material Facts, denies a number of Stevens Hale's assertions of fact but stops short of citing, within that specific document, to any record evidence to support the purported bases for dispute. (See id. at pp. 2, 4–6, 9–12.) However, in its Brief in response to Stevens Hale's Motion for Summary Judgment, Encompass does cite to record evidence related to the areas of dispute. (See doc. 60, pp. 6–13.) In similar situations, this Court has recognized that Local Rule 56.1 does not clearly describe the form that a party opposing summary judgment must employ when making a "statement" opposing the movant's material facts. Thus, the Court has declined to deem admitted all the facts contained in a movant's statement of material facts simply because the party opposing summary judgment did not file a statement in addition to a brief. See Ratchford v. F.D.I.C., No. 6:11-cv-107, 2013 WL 2285805, at *4 (S.D. Ga. May 23, 2013) ("[T]his District's rule does not define what constitutes a 'statement,' [in response to an opponent's statement of material facts] nor can the Court locate a case doing so. Absent more direct guidance, the Court declines to import the [United States District Court for the Northern District of Georgia's local rule's] language requiring of such a statement individually numbered responses to a [statement of undisputed material facts]. To the extent that [the opponent's] response brief and attached exhibits controvert the [movant's statement of material facts], the Court will not deem the [statement of material facts] admitted. On the other hand, if [the opponent] has submitted nothing to controvert a particular fact in the [statement of material facts], that individual fact is established as a matter of law."); see also United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of United States & Canada, AFL-CIO, Local 188 Pension Fund v. Johnson Controls, Inc., No. 4:18-cv-182, 2022 WL 1609277, at *3–4 (S.D. Ga. May 20, 2022); Oatman v. Augusta Collection Agency, Inc., No. 1:18-cv-089, 2019 WL 6770678, at *2 (S.D. Ga. Dec. 11, 2019), *on reconsideration in part*, No. 1:18-cv-089, 2020 WL 1916173 (S.D. Ga. Apr. 20, 2020). Thus, in an abundance of caution, the Court does consider the record evidence Encompass cited in its Response to Stevens Hale's Motion for Summary Judgment. Accordingly, the Court deems admitted only the facts contained in Stevens Hale's Statement of Material Facts, (doc. 58-2), for which Stevens Hale offered sufficient support *and* which Encompass failed to properly dispute in its Response to Stevens Hale's Statement of Material Facts, (doc. 62), *or* in its Response to Stevens Hale's Motion for Summary Judgment, (doc. 60). See Fed. R. Civ. P. 56(e); see also, e.g., Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the

### A.  The Parties

Plaintiff Encompass is an insurance provider that provided insurance to non-party William Thomas and his family.  (See doc. 62, pp. 1–2; see doc. 58-3, p. 3; doc. 58-4, p. 2; see generally docs. 44, 58-1, 60.)  Defendant Stevens Hale is the insurance agency William Thomas used to obtain the Encompass insurance policy.  (See doc. 62, p. 2; see also doc. 58-14, p. 2.)  The Thomas family includes William Thomas, his wife, and their three children: Taylor Thomas, Tyler Thomas, and Catie Thomas.  (See doc. 44, pp. 2–4.)  Notably, Tyler and Catie Thomas obtained their drivers' licenses on July 9, 2014, and June 25, 2015, respectively.  (Doc. 58-4, p. 4.)

### B.  The Insurance Policy

Encompass issued an insurance policy (the "Policy") to William Thomas and his family, providing automobile liability and personal umbrella coverages, with the policy period starting June 30, 2015.  (Doc. 58-3, p. 3; doc. 58-4, p. 2.)  To obtain the Policy, William Thomas engaged Jennie Waller, an insurance agent with Stevens Hale.  (See doc. 62, p. 2.)  Waller submitted an online form application (the "Online Application") to Encompass on behalf of William Thomas to procure the Policy.  (Id.)  In response, Encompass issued a "trailing document checklist" on June 29, 2015.  (Id.)  The checklist stated, in relevant part: "RETAIN the following documents in your files (do not upload or fax): a signed copy of the Personal Auto Application [and] Personal Umbrella Application."  (Id.; see doc. 58-5.)

Waller then emailed the Policy's application documents, (doc. 58-7), (the "Retained Application") to William Thomas on June 29, 2015, for him to sign, and the parties agree that William Thomas did indeed sign most of the necessary pages in the Retained Application, (doc. 62, p. 3; see doc. 58-7).  However, William Thomas did not sign the third page of the Retained

_____

district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

Application.  (See doc. 58-7, p. 3.)  Furthermore, Waller did not send the Retained Application to Encompass prior to the issuance of the Policy, nor did Encompass request it.  (See doc. 62, p. 3; see doc. 58-4, pp. 3–4.)  Instead, Encompass received information about the Thomases through the Online Application.  (Doc. 62, p. 3; see doc. 58-4, p. 3; doc. 58-8.)  Notably, in both the Online Application and the Retained Application, Waller listed only the following family members as drivers: William Thomas, his wife, and Taylor Thomas.  (Doc. 58-4, pp. 3–4; see doc. 58-7, p. 2.)  Indeed, Waller did not list Catie or Tyler Thomas as drivers on either application.  (Doc. 58-4, pp. 3–4; see doc. 58-7, p. 2.)  Furthermore, the Policy covered, among other vehicles, a 2008 Honda CRV (the "Vehicle").  (Doc. 58-3, pp. 6–7; see doc. 58-9, p. 8.)  Finally, the Policy provided bodily injury limits of $250,000 per person/$500,000 per incident and personal umbrella limits of $2,000,000.  (Doc. 58-4, p. 2.)

C.     **The Accident & Amendments to the Policy**

On August 30, 2015, Catie Thomas was driving the Vehicle when she failed to stop at a stop sign and collided with an automobile occupied by Robert and Barbara Flynn (the "Accident").  (Doc. 44, p. 2; see doc. 62, p. 5.)  Tragically, Robert Flynn died at the scene of the Accident, and Barbara Flynn suffered significant injuries.  (Doc. 44, p. 2; doc. 46, p. 5.)  As noted above, at the time the Accident occurred, William Thomas, his wife, and Taylor Thomas were the only drivers listed on the Policy.  (See doc. 58-4, p. 3; doc. 58-9, p. 10.)

On September 1, 2015, Waller, per Encompass's request, emailed Encompass a copy of the Retained Application.  (Doc. 58-4, p. 4; see doc. 58-10.)  However, the version of the Retained Application that Waller emailed to Encompass did not contain William Thomas's signatures on any of the pages.  (See doc. 58-4, p. 4; see also doc. 58-10.)  Encompass then instructed Stevens Hale to add both Catie and Tyler Thomas to the Policy.  (Doc. 62, pp. 7–8; see doc. 58-9, pp. 173,

4

175–78; see also doc. 58-4, p. 4; doc. 58-22, pp. 10–11.)  Waller subsequently added Catie and Tyler Thomas to the Policy for a period from September 4, 2015, to June 30, 2016, for additional premiums.  (Doc. 62, pp. 7–8; see doc. 58-9, pp. 173, 175–78; see also doc. 58-4, p. 4; doc. 58-22, pp. 10–11.)  At the time Waller added Catie and Tyler Thomas (per Encompass's request), Encompass received Catie and Tyler Thomas's motor vehicle reports, which showed one "minor violation" for Tyler Thomas.  (Doc 62, pp. 7–8; see doc. 58-4, p. 5; doc. 58-20, p. 3; doc. 58-22, pp. 10–11.)  Therefore, by September 16, 2015, at the latest, Encompass possessed Tyler Thomas's motor vehicle report and knew about this minor violation.  (Doc. 58-4, p. 4; doc. 58-22, p. 12; see doc. 58-9, pp. 173, 175 (September 16, 2015, letter indicating the addition of Tyler Thomas as an operator to the Policy).)  On December 4, 2015, for an additional premium, Encompass retroactively listed Catie Thomas as a driver on the Policy since June 30, 2015—the Policy's effective date—instead of September 4, 2015.  (Doc. 62, p. 8.)  Finally, per Encompass's request, Waller emailed the signed version of the Retained Application to Encompass on January 27, 2016. (Doc. 62, pp. 6–7.)

Encompass began making payments for claims based on the Accident in September 2015. (Id. at p. 8.)  Specifically, on September 23, October 8, and November 11, 2015, Encompass issued payments for property damage stemming from the Accident.  (Id.; see doc. 58-18, pp. 11–14, 24–26.)  On July 20, 2017, the Flynn family demanded Encompass pay the $2.5 million limit on the Policy by August 11, 2017.  (Doc. 58-17, p. 7.)  After Encompass declined to comply with the Flynn family's demand, the Flynn family filed suit on August 11, 2017.  (Id. at pp. 9–12, 16.) Though the exact date is unclear from the record, the parties agree that Encompass settled the suit by paying the Flynns $2,275,000 at some point after August 11, 2017.  (Doc. 62, p. 11.)

## II.     Procedural History

Encompass originally filed suit on April 11, 2019, (doc. 1), and ultimately filed a Second Amended Complaint, alleging claims of negligence, negligent misrepresentation, and negligent undertaking against Stevens Hale, (see doc. 44, pp. 5–9).  Stevens Hale subsequently filed its Motion for Summary Judgment, seeking summary judgment on all of Encompass's claims.  (Doc. 58.)  Encompass filed a Response, (doc. 60), and Stevens Hale filed a Reply, (doc. 65).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party

discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  <u>Anderson</u>, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  <u>Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty.</u>, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing <u>Rodriguez v. Sec'y for Dep't of Corr.</u>, 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Id.</u> (citation and emphasis omitted).  Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence.  <u>Reese v. Herbert</u>, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

Encompass asserts three claims against Stevens Hale: (1) negligence, (2) negligent misrepresentation, and (3) negligent undertaking.  (Doc. 44, pp. 5–9.)  At bottom, Encompass alleges that Stevens Hale negligently failed to list Catie and Tyler Thomas as household residents, dependents, and licensed drivers in the Policy's application documents.  (<u>See id.</u>)  According to Encompass, had Stevens Hale listed Catie and Tyler Thomas as household residents, dependents, and licensed drivers in the Policy's application documents, then Encompass would not have issued the Policy to the Thomases in the first place.  (<u>See id.</u> at pp. 7, 9–10.)  Stevens Hale moves for summary judgment on all of Encompass's claims, arguing, among other things, that Encompass

failed to produce a necessary expert witness and that the voluntary payment doctrine bars

Encompass's claims.  (See doc. 58-1, pp. 7–12.)

## I.     Expert Witness

Stevens Hale first argues that it is entitled to summary judgment on Encompass's claims

because Encompass failed to disclose any expert witness or serve any expert witness report.  (Id.

at pp. 7–9.)  According to Stevens Hale, Encompass's claims amount to claims of professional

negligence, and thus, under Georgia law, must have supporting expert testimony to "establish the

standard of care as an insurance agent submitting policy applications to an insurance carrier."  (Id.

at p. 8.)  Encompass responds that O.C.G.A. § 9-11-9.1, which governs professional negligence

claims, does not require expert testimony in professional negligence cases against insurance

agents.[2]  (Doc. 60, pp. 1–3.)

As an initial matter, O.C.G.A. § 9-11-9.1 is not implicated in this case.  First, O.C.G.A. §

9-11-9.1 sets out an "initial pleading requirement rather than an evidentiary requirement."  Minnix

v. Dep't of Transp., 533 S.E.2d 75, 79 (Ga. 2000).  Thus, the statute is inapplicable at this stage in

the litigation and does not impact or alter a plaintiff's burden to produce expert testimony at trial

in professional malpractice cases.  See id. ("The inclusion or exclusion of a profession or employer

from [O.C.G.A. § 9-11-9.1's] ambit does not change a plaintiff's burden in a professional

malpractice case to produce at trial expert testimony to establish the parameters of acceptable

_____

[2] O.C.G.A. § 9-11-9.1 requires an expert affidavit in actions alleging professional malpractice against the
categories of professionals listed in O.C.G.A. § 9-11-9.1(g).  See O.C.G.A. § 9-11-9.1.  The applicable
categories of professionals are:  (1) architects; (2) attorneys; (3) audiologists; (4) certified public
accountants; (5) chiropractors; (6) clinical social workers; (7) dentists; (8) dietitians; (9) land surveyors;
(10) marriage and family therapists; (11) medical doctors; (12) nurses; (13) occupational therapists; (14)
optometrists; (15) osteopathic physicians; (16) pharmacists; (17) physical therapists; (18) physicians'
assistants; (19) podiatrists; (20) professional counselors: (21) professional engineers; (22) psychologists:
(23) radiological technicians; (24) respiratory therapists; (25) speech-language pathologists; and (26)
veterinarians.  O.C.G.A. § 9-11-9.1(g).

professional conduct, a significant deviation from which would constitute malpractice.") (internal quotations omitted).  Furthermore, the statute does not apply in federal court.  See Callaway v. O'Connell, 44 F. Supp. 3d 1316, 1329 n.7 (M.D. Ga. 2014) ("[T]he requirement that a plaintiff attach an expert affidavit to his complaint in a professional malpractice action pursuant to O.C.G.A. § 9-11-9.1 does not apply in federal court."); Robinson v. Corr. Med. Assocs., Inc., No. 1:09-cv-01509-JOF, 2010 WL 2499994, at *4 (N.D. Ga. June 15, 2010) (finding that the pleading requirements of O.C.G.A. § 9-11-9.1 do not apply in federal court).  Therefore, O.C.G.A. § 9-11-9.1 is inapplicable to this case.

Nonetheless, the Court is not persuaded by Stevens Hale's argument that expert testimony is required in this case because, as Encompass notes, it has not asserted claims of professional negligence.  (Doc. 60, pp. 1–2.)  Under Georgia law, "[e]xpert testimony is *required* in cases of professional negligence where the subject matter is beyond the familiarity of the average layperson."  Goolsby v. Gain Techs., Inc., 362 F. App'x 123, 135 (11th Cir. 2010) (citing Marquis Towers, Inc. v. Highland Grp., 593 S.E.2d 903, 906 (Ga. Ct. App. 2004); Dep't of Transp. v. Mikell, 493 S.E.2d 219, 223 (Ga. Ct. App. 1997); H. Elton Thompson & Assocs., P.C. v. Williams, 298 S.E.2d 539, 540 (Ga. Ct. App. 1982)).  However, "[n]ot every claim which calls into question the conduct of one who happens to be a professional is a professional malpractice claim requiring expert testimony."  Sood v. Smeigh, 578 S.E.2d 158, 161 (Ga. Ct. App. 2003); see, e.g., Hillhaven Rehab. & Convalescent Ctr. v. Patterson, 392 S.E.2d 557, 558 (Ga. Ct. App. 1990) ("There is no requirement that expert testimony be produced by a plaintiff proceeding upon a simple negligence theory in order to prevail a trial.").  "Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of

professional judgment and skill." <u>Upson Cnty. Hosp., Inc. v. Head</u>, 540 S.E.2d 626, 630 (Ga. Ct.

App. 2000). As the Georgia Court of Appeals has explained,

> Although complaints against professionals may state claims based on ordinary as
> well as professional negligence, where the allegations of negligence against a
> professional involve the exercise of professional skill and judgment within the
> professional's area of expertise, the action states professional negligence. If a claim
> of negligence goes to the propriety of a professional decision rather than to the
> efficacy of conduct in the carrying out of a decision previously made, the claim
> sounds in professional negligence. However, *administrative, clerical, or routine*
> *acts demanding no special expertise fall in the realm of simple negligence.*

<u>Bartenfeld v. Chick-fil-A, Inc.</u>, 815 S.E.2d 273, 276 (Ga. Ct. App. 2018) (emphasis added).

Furthermore, "[w]hether a complaint alleges ordinary negligence or professional malpractice is a

question of law for the court, regardless of how the plaintiff categorizes it." <u>Id.</u>

Here, the crux of Encompass's claims is that Stevens Hale failed to fully and accurately fill

out and submit the Policy applications. (<u>See</u> doc. 44.) Specifically, Encompass claims that Stevens

Hale failed to comply with the Policy applications' instructions when it omitted Catie and Tyler

Thomas from the Policy applications. (<u>See</u> <u>id.</u>) The Court finds that Encompass's claims sound

in simple negligence rather than professional malpractice because they do not involve Stevens

Hale's "exercise of professional skill and judgment." <u>Bartenfeld</u>, 815 S.E.2d at 276. Indeed,

Encompass's claims do not involve "technical" issues of insurance, such as determining the

amount of coverage an insured needs or giving advice on coverage options. <u>Cf.</u> <u>Goolsby</u>, 362 F.

App'x at 135 ("The gravamen of Goolsby's negligence claim is that Gain's use of P20 steel to

fabricate a mold for gas-assisted injection molding fell below the required standard of care in this

particular industry. That technical question is beyond the expertise of an ordinary juror."); <u>see</u> <u>Salt</u>

<u>Lake City Sch. Dist. v. Galbraith & Green, Inc.</u>, 740 P.2d 284, 289 (Utah Ct. App. 1987) ("The

insurance cases which have required expert testimony involve technical insurance issues."). 

Instead, Encompass's claims are based on Stevens Hale's failure to perform the ministerial task of

filling out an insurance policy application pursuant to its instructions.  (See doc. 44.)  Such claims do not require expert knowledge or expertise.  See Allstate Property & Cas. Ins. Co. v. Mirkia, No. 2:12-cv-01288-RCJ-PAL, 2014 WL 2801310, at *13 (D. Nev. June 19, 2014) ("At one end of the spectrum are those cases in which an [insurance] agent negligently fails to procure requested coverage or permits coverage to lapse by failing to advance premiums due.  Under these circumstances, commonly understood by laypersons, courts have held that expert testimony regarding the standard of care and its breach is not necessary.  At the other end of the spectrum are cases involving the agent's alleged failure to discern coverage gaps or risks of exposure in more complex business transactions.  In such cases, courts have required expert testimony to establish the applicable standard of care.") (citations omitted); compare CIGNA Prop. & Cas. Cos. v. Zeitler, 730 A.2d 248, 258–61 (Md. Ct. App. 1999) (no expert required where plaintiff's negligence claim against insurance broker was based on the broker's failure to procure an insurance policy the plaintiff specifically requested in an application), with Dulaney v. State Farm Fire & Cas. Ins. Co., 324 P.3d 1211, 1215–16 (Mont. 2014) (finding that expert testimony was required in negligence case against an insurer where the plaintiff alleged that the insurer's agent should have "ascertain[ed] the amount of insurance coverage [the plaintiff] needed" by valuing her property and examining depreciation schedules), and Casas v. Farmers Ins. Exch., 130 P.3d 1201, 1208–09 (Kan. Ct. App. 2005) (expert required where the plaintiff's negligence claim was based on the insurance agent's failure to ask further questions that would have enabled the agent to procure an appropriate insurance policy); see also generally BSF, Inc. v. Cason, 333 S.E.2d 154, 157 (Ga. Ct. App. 1985) ("Even if we were to assume that expert testimony is necessary to establish the standard of care required of an insurance agent, such testimony is not necessary where the questions presented concern a matter which a jury can be credited with knowing by reason of

common knowledge or the possibility of actionable . . . negligence appears so clearly from the record that [the plaintiff] need not produce expert . . . testimony concerning the applicable standard of care. . . .   From the jury's verdict it is apparent that the negligence attributed to the insurance agent was her failure to accurately record [the plaintiff's] answers to the insurance application question she propounded to him.  Inasmuch as the factual contention is not one capable of proof *only* by expert testimony, it was not necessary for [the] plaintiff . . . to produce expert testimony at trial.") (internal quotations and citations omitted).[3]   Therefore, Encompass is not required to introduce expert testimony in support of its claims to survive summary judgment.

Accordingly, Stevens Hale is not entitled to summary judgment on this basis.

## II.    **Voluntary Payment Doctrine**

Stevens Hale next argues that it is entitled to summary judgment on Encompass's claims because the "voluntary payment doctrine" bars those claims.  (Doc. 58-1, pp. 9–12.)  The voluntary payment doctrine—codified in O.C.G.A. § 13-1-13—provides that the recovery of a payment is barred when three conditions are met: (1) "the payment [was] made through the ignorance of the law or where all material facts are known"; (2) "the payment [was] not . . . induced by misplaced confidence, artifice, deception, or fraudulent practice on the part of the person to whom the [payment was] made"; and (3) "the payment [was] not . . . made under an urgent necessity or for

---

[3]  The holdings of Georgia courts in other contexts are consistent with the Court's conclusion.  See Upson Cnty. Hosp., Inc., 540 S.E.2d at 630 ("We have previously held that a nurse's failure to activate an alarm, as a doctor ordered, was ordinary negligence.  Likewise, claims that employees failed to carry out instructions, and that hospitals failed to have appropriate equipment alleged ordinary negligence."); Woodstone Townhouses, LLC v. S. Fiber Worx, LLC, 855 S.E.2d 719, 743 (Ga. Ct. App. 2021) ("Although we agree that Internet service occurs in a highly regulated field and some aspects may require specialized knowledge presented by expert testimony, whether a service provider is permitted to enter an individual's property to install conduit is not regulated, and testimony regarding industry standards surrounding installation, while permissible, is not dispositive.").

the other reasons specified in the statute."[4] <u>Cotton v. Med-Cor Health Info. Sols., Inc.</u>, 472 S.E.2d 92, 96 (Ga. Ct. App. 1996).  The party seeking to recover the payment bears the burden of showing that the voluntary payment doctrine does not apply.  <u>S. Mut. Church Ins. Co. v. ARS Mech., LLC</u>, 703 S.E.2d 363, 366 (Ga. Ct. App. 2010); <u>see, e.g.</u>, <u>Telescripps Cable Co. v. Welsh</u>, 542 S.E.2d 640, 642 (Ga. Ct. App. 2000).

The parties' dispute focuses on the first condition of the voluntary payment doctrine as Encompass does not appear to contest that the second and third conditions are satisfied.  (<u>See</u> doc. 58-1, pp. 9–12; doc. 60, pp. 3–5; doc. 65, pp. 8–12.)  Concerning the first condition, Stevens Hale argues that the voluntary payment doctrine bars Encompass's claims because Encompass was aware of the facts supporting its coverage defenses prior to satisfying any claims under the Policy or retroactively adding Catie Thomas to the Policy.  (<u>See</u> doc. 58-1, p. 10.)  Specifically, Stevens Hale argues that Encompass knew before making payments that (1) Catie and Tyler Thomas were not listed in the Policy applications, (2) William Thomas failed to sign the third page of the Retained Application, and (3) Tyler Thomas's motor vehicle report showed a minor violation.  (<u>Id.</u>)  Encompass responds that the voluntary payment doctrine does not bar its claims because it did not have "full knowledge of all the facts and circumstances" before it retroactively added Catie Thomas to the Policy.  (Doc. 60, pp. 3–5.)  Specifically, Encompass asserts that it was not aware until *after* it decided to extend coverage to Catie Thomas that (1) William Thomas did not

---

[4] O.C.G.A. § 13-1-13 provides:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.  Filing a protest at the time of payment does not change the rule prescribed in this Code section.

"completely fill[] out" the Retained Application or (2) "a brother existed [i.e., Tyler Thomas] that would have kept the [P]olicy from being issued at all."  (Id. at p. 4 (internal quotations omitted).)

The Court finds that Encompass has failed to create a question of material fact as to whether the voluntary payment doctrine bars the recovery of its payments.  "Georgia courts routinely have applied the voluntary payment doctrine to preclude recovery of payments made without actual knowledge of all the facts *as long as the payer had constructive knowledge of the material facts*." Goldstein v. Home Depot U.S.A., Inc., 609 F. Supp. 2d 1340, 1346 (N.D. Ga. 2009) (emphasis added) (citing Applebury v. Teachers Ret. Sys. of Ga., 620 S.E.2d 452, 453 (Ga. Ct. App. 2005); Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc., 606 S.E.2d 10, 12 (Ga. Ct. App. 2004); Liberty Nat'l Life Ins. Co. v. Radiotherapy of Ga., P.C., 557 S.E.2d 59, 63 (Ga. Ct. App. 2001)).  In other words, "the party seeking to recover must prove that its payment was not voluntarily made because certain material facts were not known at the time of payment, or *because a valid reason existed for its failure to determine the truth*." Applebury, 620 S.E.2d at 453 (emphasis added); see Fitzgerald Water, Light & Bond Comm'n, 606 S.E.2d at 12 ("[E]ven though [the defendant] complains that it lacked actual knowledge of the rates it was charged, it had the means of such knowledge at its disposal.") (internal quotations omitted).

Here, Encompass relies on the Rule 30(b)(6) deposition of Joni Coscia for the proposition that Encompass did not know about Tyler Thomas and his driving record until January 2016.  (Doc. 60, pp. 4–5.)  However, based on the excerpts of Coscia's testimony provided by Encompass, Coscia did *not* testify that Encompass was unaware of Tyler Thomas until January 2016.  (See doc. 60-1.)  Rather, Coscia testified that the *claims department* at Encompass was not aware of Tyler Thomas until January 2016.  (See id. at pp. 4–5.)  Coscia's testimony does not refute the fact that *Encompass* received Tyler Thomas's motor vehicle report indicating his minor violation by

September 16, 2015.  (Doc. 58-4, p. 4; doc. 58-22, pp. 10–12.)  Thus, Encompass had actual knowledge—or, at minimum, constructive knowledge—of Tyler Thomas and his minor violation prior to December 4, 2015, when it retroactively listed Catie Thomas as a driver on the Policy since its effective date.  (Doc. 62, p. 8.)  Indeed, Encompass does not point to any evidence indicating that its claims department could not obtain or review Tyler Thomas's motor vehicle report that was already in Encompass's possession.  (See doc. 60.)

Furthermore, Encompass had constructive knowledge that William Thomas failed to sign the third page of the Retained Application.  Though Encompass did not obtain the signed version of the Retained Application (and, thus, apparently did not realize the third page was unsigned) until January 27, 2016, Encompass failed to point the Court to any evidence showing that it did not have "the means of such knowledge."  Fitzgerald, Water, Light & Bond Comm'n, 606 S.E.2d at 12.  Rather, as Coscia testified, Encompass "could've asked [Stevens Hale] for information" at any point, and "nothing prevented [it] from getting information."  (Doc. 58-18, p. 19.)  It is undisputed that *Encompass* requested that Stevens Hale send the Retained Application in September 2015, nearly two months before Encompass retroactively extended the Policy's coverage to Catie Thomas.  (Doc. 58-4, p. 4; see doc. 58-10; doc. 62, p. 8.)  Waller complied with Encompass's request, although she unintentionally e-mailed Encompass an unsigned version of the Retained Application.  (See doc. 58-4, p. 4; see also doc. 58-10.)  At that point, upon reviewing the document *it* requested, Encompass could have simply asked Waller to send a signed version of the Retained Application.  However, Encompass failed to do so until *after* it accepted a premium to extend the Policy's coverage to Catie Thomas.  (Doc. 62, pp. 6–7.)  Indeed, the fact that Waller emailed the signed version to Encompass in January 2016 *upon Encompass's request* indisputably establishes that Encompass had the means of obtaining the signed version prior to making coverage

decisions with respect to Catie Thomas.  (See id.)  Thus, based on the foregoing, the Court finds

that Encompass failed to create a question of material fact as to whether it lacked actual or

constructive knowledge of Tyler Thomas, Tyler Thomas's driving record, and William Thomas's

failure to sign the third page of the Retained Application.  See Fitzgerald, Water, Light & Bond

Comm'n, 606 S.E.2d at 12 ("Shaw Industries paid its electrical bills upon receipt of invoices that

set out, in detail, the actual rates used to calculate its bill. The Commission's rates were not hidden

from Shaw Industries; they were set out in writing each month for many years. Any inconsistencies

between the amounts actually charged and the amounts Shaw Industries thought it should have

been charged . . . could have been discovered simply by comparing the invoices received with the

Georgia Power invoices it had on hand.  Thus, even though Shaw Industries complains that it

lacked actual knowledge of the rates it was charged, it had 'the means of such knowledge' at its

disposal."); Applebury, 620 S.E.2d at 194 ("[O.C.G.A. § 13-1-13] applies both to one who pays

money with knowledge of all the facts and to one who pays by mistake without a valid reason for

failing to ascertain the truth—or, in other words, to cases involving both actual and constructive

knowledge on the part of the payor."); 401 Oak Grove, LLC v. Louis Dreyfus Co. Cotton Storage,

LLC, No. 1:17-CV-1430-ODE, 2019 WL 12285182, at *7 (N.D. Ga. Mar. 28, 2019) ("Defendant

had the means to acquire knowledge of the scope of the parking lot work at its disposal: it could

have observed the work as the lessee of the Property or inquired into the parking lot expenses after

receiving notice of them.  It did neither.  Defendant knew parking lot work was happening, and

information regarding the scope and extent of that work was readily available to Defendant.  Thus,

the Court finds the first requirement of the voluntary payment doctrine is met.").

Accordingly, the Court finds that the voluntary payment doctrine bars Encompass's claims.[5]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Stevens Hale & Associates' Motion for Summary Judgment.  (Doc. 58.)  The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant and to **CLOSE** this case.

**SO ORDERED**, this 11th day of August, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5] Because Stevens Hale is entitled to summary judgment on this basis, the Court declines to address Stevens Hale's other arguments for summary judgment.

17